UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED

SEP 23 2021

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

BRETT KIMBERLIN
    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF JUSTICE,
U.S. ATTORNEY GENERAL MERRICK GARLAND,
ALCOHOL, TOBACCO AND FIREARMS,
INDIANA STATE POLICE,
BROOKE APPLEBY,
MICHAEL OLIVER,
PATRICK DONOVAN,
KENNARD FOSTER,
SHIRLEY HENDERSON,
    and
DONALD HENDERSON,
    Defendants.

**1 : 2 1**-cv-**2 5 0 6** SEB -TAB
No.

### COMPLAINT FOR DECLARATORY RELIEF AND FOR DAMAGES FOR VIOLATION OF CONSTITUTIONAL RIGHTS

Plaintiff Brett Kimberlin complains of Defendants United States Department of

Justice, Attorney General Merrick Garland, Alcohol Tobacco and Firearms, Indiana

State Police, Brooke Appleby, Michael Oliver, Patrick Donovan, Shirley Henderson,

Donald Henderson and Kennard Foster as follows:

### Narrative of Relevant Facts

#### The Microscopic Hair Evidence And Missing DNA Evidence

1. Plaintiff Brett Kimberlin was wrongly convicted of a series of 1978 offenses of

which he is totally innocent. Plaintiff lost more than a decade of his life unjustly

imprisoned for those offenses yet he has been unable to be exonerated because of

1

the actions of Defendants Department of Justice ("DOJ") and Alcohol, Tobacco and Firearms ("ATF") regarding biological DNA evidence from the crime scene that was in the possession of ATF, and false microscopic hair evidence and testimony that was introduced at Plaintiff's trial. DOJ and ATF lost or destroyed that DNA evidence without complying with federal statutes and regulations. DOJ, after determining that microscopic hair evidence is false, refused to comply with its own directives that gave Plaintiff a due process right to challenge the use of such false evidence without any barriers. Those directives from the Attorney General's Office and FBI Headquarters require a waiver of defenses, admission of falsity, imputation of falsity to the government, and exoneration with or without DNA evidence.

2. In 2015, the DOJ and FBI released a report finding that 95% of all microscopic hair evidence and testimony prior to 2000 was false, and that false evidence resulted in hundreds of wrongful convictions. The FBI stated that it was continuing to review all cases in which such evidence was used in order to contact the defendants so they could challenge and vacate their convictions. On February 26, 2016, then-FBI Director James Comey sent a letter to the Governors of all 50 states, including Indiana, urging them and their crime labs to conduct their own reviews since many state microscopic hair analysts were trained by the FBI and gave false testimony as a result.

3. Indiana State Police ("ISP") Sergeant Michael Oliver was presented by the DOJ as a microscopic hair expert during Plaintiff's 1981 trial, and he testified that hair found on a ball cap had a "common origin" to Plaintiff's hair. This is another

way of saying that the hair "matched" Plaintiff's hair, which the 2015 DOJ report considers the most serious error possible in microscopic hair cases. Sgt. Oliver's microscopic hair analysis was conducted at the Indiana State Police Laboratory. The false testimony of Sergeant Oliver was the last testimony the jury heard during the trial and it contributed to the jury verdict. This fabrication was directly at odds with the accepted practices in the field of hair analysis at that time. Specifically, even accepted science in 1981 stated that a comparison could not produce a match that could uniquely identify one person as the source of a hair or hairs.

4. Based in part on the fabricated microscopic hair evidence by ISP, Michael Oliver and DOJ, Plaintiff was wrongfully convicted and sentenced to 50 years in prison.

5. In 2019, after Plaintiff challenged the use of microscopic hair evidence in his criminal case, the DOJ refused to comply with its own directives in several ways; first by refusing to waive barriers and procedural defenses; second, by not admitting the falsity of the evidence; third, by not imputing that falsity to the government; and fourth, by refusing to exonerate Plaintiff even after the DOJ and ATF admitted that the hair evidence was lost or destroyed and therefore could not be tested to rule out Plaintiff or point to the real perpetrator. The FBI has never reviewed the use of false microscopic hair evidence in Plaintiff's case despite his raising the issue in his post-conviction motions, and his repeated letters to the DOJ's Inspector General and Office of Professional Responsibility in 2019, 2020 and 2021.

6. The DOJ has known, at least since 1977, four years prior to Plaintiff's trial, that microscopic hair evidence is not reliable. John W. Hicks, Special Agent, "Microscopy of Hairs: A Practical Guide and Manual, Federal Bureau of Investigation, U.S. Department of Justice" (Jan. 1977) p. 41. (https://www.ncjrs.gov/pdffiles1/Digitization/78957NCJRS.pdf)   In 1999, DOJ also issued a directive to all US Attorneys entitled, "Post Conviction DNA Testing: Recommendations For Handling Requests" requiring prosecutors to take "affirmative steps to prevent the destruction of potentially relevant evidence that may or may not have been tested. Immediate action may be needed when there is a policy authorizing the routine destruction of evidence." https://www.ncjrs.gov/pdffiles1/nij/177626.pdf  Despite the DOJ's knowledge about the unreliability of microscopic hair evidence and the importance of retaining biological evidence, DOJ and ATF failed to do this in Plaintiff's case.

7. The Indiana State Police has never, upon Plaintiff's belief, conducted any review of cases in which microscopic hair evidence analyzed in its labs has been used in criminal trials. On April 23, 2020, Plaintiff sent a letter to Indiana Governor Eric Holcomb and ISP Superintendent Douglas Carter requesting that they conduct a "comprehensive review of all criminal cases involving Indiana State Police Microscopic Hair Analysts over the past five decades." Neither of those public officials ever responded to that letter and there has been no public announcement about such a review. Many other states have conducted such reviews and exonerated many wrongfully convicted defendants as a result.

8. At least two other wrongfully convicted Indiana defendants spent a combined three decades in prison based on false microscopic hair evidence/testimony from the Indiana State Police Laboratory. William Barnhouse spent 25 years in prison and Richard Alexander spent five years in prison for rape and sexual assaults they did not commit after ISP analysts testified falsely that microscopic hair found at the crime scene matched their hair. Later DNA evidence proved that testimony false.

9. ATF failed to retain the biological evidence used at Plaintiff's trial and has asserted through the DOJ that it cannot locate the evidence or Plaintiff's case file or even any certificate of destruction as required by ATF regulations. The DOJ cannot assert with certainty what happened to the hair evidence. Despite this, the DOJ still refuses to comply with its directives on microscopic hair evidence which would allow exoneration with or without the biological evidence.

10. Because of the missing biological evidence and the refusal of the DOJ to comply with its own directives, Plaintiff's post-conviction motions were denied.

**The Jury Tampering, Fraud Upon The Court, And Nearly 40-Year Coverup**

11. In the summer of 1978, Indiana State Police Detective Brooke Appleby teamed up with the ATF, ATF agent Patrick Donovan and Assistant US Attorney Kennard Foster to wrongfully convict Plaintiff. Detective Appleby had been secretly investigating Plaintiff for years prior to his arrest but had never been able to connect him to any criminal activity. He harbored an extreme bias against Plaintiff and offered to hypnotize witnesses to falsely implicate Plaintiff in the unsolved 1978 crimes. Sometime in the fall of 1978, Detective Appleby hypnotized witnesses who

then falsely implicated Plaintiff in criminal activity. The hypnosis evidence was fabricated.

12. Hypnosis evidence is now considered unreliable junk evidence that has been banned by virtually all courts. Defendants Brooke Appleby, Patrick Donovan and Kennard Foster knew that it was unreliable but used it at Plaintiff's trial in order to wrongfully convict him. The DOJ, ATF, Patrick Donovan, and Brooke Appleby all knew at the time of Plaintiff's trial that the hypnotizing of witnesses could undermine the fairness of Plaintiff's trial.

13. Prior to the hypnosis sessions, Detective Appleby met with ATF Agent Patrick Donovan and gave him a large investigative file, approximately six inches thick, that he had compiled during his secret, multi-year investigation of Plaintiff. That file was withheld from Plaintiff during trial despite repeated discovery requests, and repeated assurances from the DOJ that it had provided all discovery.

14. Detective Appleby testified as a hypnosis expert at Plaintiff's first criminal trial that ended in a hung jury on the relevant counts, 9 to 3 for acquittal. At no time did he mention that he had amassed the huge file.

15. During voir dire at the retrial of the relevant counts, prospective juror Shirley Henderson stated falsely that she did not know anyone who worked in law enforcement and did not have any friends involved with law enforcement. In fact, however, she and her husband Donald were close relatives and friends of Detective Appleby and she knew that he was employed in law enforcement and that he had testified at Plaintiff's first trial and would testify at the retrial. Detective Appleby

had spent a great deal of time with the Hendersons and at each other's homes in the years prior to the trial. Shirley Henderson was chosen as a juror based on her intentionally false statements during voir dire.

16. The trial judge repeatedly instructed the jurors that they could have no contact with anyone outside of the jury, and to report any contacts to the court. Shirley Henderson repeatedly violated those instructions by having contact with Detective Appleby and the case agents, including Patrick Donovan, directly and indirectly through her husband during trial and/or during post trial juror misconduct proceedings. She told her husband Donald that she was a juror and Donald met with Detective Appleby during the trial to discuss her jury service. Neither Detective Appleby nor Juror Henderson informed the court about their relationship even when he testified mere feet from her at trial. Neither Detective Appleby nor Patrick Donovan, both officers of the court, informed the court of their contacts with Juror Henderson or her husband, and did not intervene to stop Shirley Henderson's lies and jury corruption. Neither Shirley Henderson nor her husband Donald informed the judge or defense counsel about their close relationship with Detective Appleby. In fact, they actively hid that relationship. Detective Appleby maintained a close relationship with Shirley and Donald Henderson after Plaintiff's trial and, in fact, Donald Henderson later hired Detective Appleby to work at the Indiana Farm Bureau where Donald Henderson was an executive.

17. Kennard Foster was one of two Assistant US Attorneys prosecuting the case and he was responsible for the conduct of his witness, Detective Appleby, and his case agent, Patrick Donovan. AUSA Foster, by virtue of that supervisory capacity and as an officer of the court, was required to inform the trial court of the corrupt relationship between Detective Appleby and Juror Henderson. However, he failed to intervene after he learned about the corrupt relationship and hid that relationship from the trial court in order to ensure Plaintiff's wrongful conviction.

18. Juror Henderson voted to convict Plaintiff and exerted a powerful influence on the other jurors to convict. When an alternate juror complained about other juror misconduct following the jury verdict, Juror Henderson contacted Patrick Donovan and met with him, her husband, Detective Appleby and others after the trial to discuss strategy on how to counter the alternate juror's revelations. All of those parties hid this meeting from the trial judge and defense counsel.

19. In the spring of 2019, Dan Luzadder, an investigative reporter who previously worked at the *Indianapolis Star,* was investigating some cold cases from 1978 and he was referred by another Indiana State Police detective to talk with Detective Brooke Appleby. In a series of phone interviews, Detective Appleby made three crucial and startling admissions to Mr. Luzadder: first, that he was a participant in a jury tampering scheme along with Shirley Henderson, Donald Henderson, Patrick Donovan and Kennard Foster; second, that he was not the independent hypnotist the DOJ presented him to be at trial because he had been secretly investigating Plaintiff for years prior to the hypnosis sessions and had

amassed a huge investigative file; and third, that he gave that investigative file to ATF Agent Patrick Donovan prior to the hypnosis sessions and it was never returned. He told Mr. Luzadder that he and Juror Henderson agreed not to have eye contact during the trial out of fear of discovery, and he mocked defense counsel for not discovering that he was related to Juror Henderson. He told Mr. Luzadder that prior to the hypnosis sessions, he had spent years covertly following Plaintiff, taking photos of him and his properties by ground and air, and engaging in other types of warrantless surveillance.

20. In 2019 and 2020, when Plaintiff brought this jury tampering to the attention of the District Court in a motion to vacate, the DOJ refused to accept responsibility for the jury tampering or to agree to vacate Plaintiff's conviction. Instead, it falsely accused Plaintiff of tampering with the jury in order to muddy the issue, distract from its own unethical conduct, and ensure that Plaintiff would not be exonerated. This misconduct by the DOJ is part of its ongoing coverup and fraud upon the court.

21. The DOJ and Kennard Foster falsely told the 1981 trial court that Detective Appleby was "independent" in order to bolster their argument that the hypnosis sessions were not tainted by bias or an agenda. The trial judge relied on that false statement to allow the use of hypnosis. When Plaintiff appealed his conviction to the Seventh Circuit Court of Appeals, the DOJ falsely told the court that Detective Appleby was independent, and that court relied on that false assertion to uphold Plaintiff's conviction. And when Plaintiff petitioned for Supreme Court review, the

Solicitor General and the Supreme Court relied on that false statement to deny certiorari.

22. In 2019, Detective Appleby stated to Mr. Luzadder and in a sworn declaration that he gave the investigative file to Patrick Donovan and did not make a copy. He stated that Agent Donovan never returned the file to him. Agent Donovan falsely stated that he returned the file to Detective Appleby. This false statement was made as part of the DOJ's continuing coverup of its misconduct and to ensure that Plaintiff is not exonerated.

23. On March 24, 2019, Plaintiff filed a records request with Indiana State Police for all records related to him, including all information about the investigations by Detective Appleby and the microscopic hair analysis by Sergeant Oliver. On April 11, 2019, Cynthia Forbes, Legal Counsel of ISP responded that it had no documents or files whatsoever about Plaintiff.

24. Detective Appleby was apparently engaged in a multi-year rogue investigation of Plaintiff while employed by the ISP, and was conducting surveillance of Plaintiff, taking photographs of Plaintiff and others with him, covertly following Plaintiff, and entering his properties without a warrant, all without proper supervision by ISP, without logging his activities, and without filing copies of his activities or other official reports. Detective Appleby kept his investigative file in his personal possession. The Indiana State Police failed to supervise him during this investigation and failed to supervise him when he engaged in jury tampering during Plaintiff's trial.

25. Despite Detective Appleby's rogue and renegade conduct, ISP is responsible for his conduct because he was employed by ISP during the time he engaged in the misconduct.

26. Detective Appleby, Shirley Henderson, Donald Henderson, Patrick Donovan, and Kennard Foster (and others unknown or deceased) engaged in a corrupt scheme to deprive Plaintiff of a fair trial, impartial jury, and due process. They did this and then entered into a conspiracy of silence for almost 40 years, including more than a decade while Plaintiff suffered and languished in prison while always maintaining his innocence. To this day, the only one of these conspirators to admit his culpability is Detective Appleby, and he did so under oath in a federal court declaration.

27. DOJ and ATF covered up this corrupt scheme at the criminal trial, on appeal and on certiorari in order to deprive Plaintiff of his constitutional rights. The DOJ has continued to coverup this corrupt scheme throughout Plaintiff's post-conviction process. This continued coverup by the DOJ is to ensure that Plaintiff's is not exonerated.

28. Kennard Foster acted in a supervisory capacity during the investigation and trials of Plaintiff, and he knew full well that Detective Appleby, Shirley Henderson, Donald Henderson and Patrick Donovan were engaged in misconduct, jury tampering, false statements, and fabrications in order to wrongfully convict Plaintiff. However, AUSA Foster intentionally ignored, assisted and approved of their misconduct in order to ensure that Plaintiff was convicted and his criminal

appeal was denied. Moreover, AUSA Foster concealed the misconduct from Plaintiff and his attorneys, and allowed false statements to be made to the trial, appellate and Supreme courts. AUSA Foster failed to intervene when he had an legal obligation to do so.

29. Absent the misconduct of Detective Appleby, Shirley Henderson, Donald Henderson, Patrick Donovan, and Kennard Foster, Plaintiff would not have been convicted and his conviction would never have been upheld on appeal.

30. The misconduct of Detective Appleby, Shirley Henderson, Donald Henderson, Patrick Donovan, and Kennard Foster not only violated Plaintiff's constitutional and statutory rights, it also constituted fraud upon the court because it undermined the integrity of the court.

**Plaintiff's Injuries**

31. Plaintiff was the owner of a small business in Indianapolis when he was wrongfully arrested and convicted. He was arrested, prosecuted and convicted because Detective Appleby, Shirley Henderson, Donald Henderson, Patrick Donovan, and Kennard Foster were hellbent on ensuring that Plaintiff be imprisoned for their own unethical reasons.

32. During his more than a decade of wrongful imprisonment, Plaintiff was deprived of his ability to interact freely with his loved ones, to be present for holidays, births, deaths, and other life events, to pursue his passion and interests, to engage in meaningful labor, to travel, and live free as an autonomous human being. While incarcerated, his brother, and several grandparents passed away and

Plaintiff was not allowed to attend their funerals. Plaintiff missed his brother's and sister's weddings and the births of their children.

33. Plaintiff was detained in very harsh, dangerous and isolating prisons, and falsely branded as a violent offender. He was repeatedly moved to different prisons in Illinois, Wisconsin, Missouri, Oklahoma, Virginia and Tennessee far from his family. He spent years in pretrial detention, much in solitary confinement, and was repeatedly placed in solitary in seven different prisons. He witnessed gratuitous violence, beatings, abject cruelty, rapes, and corruption on a grand scale. He was repeatedly denied parole because of his wrongful conviction. The conviction was used to form liability for a state civil suit that resulted in a $1.5 million judgment and that judgment was also used to deny Plaintiff parole and later to violate his parole and drive him into bankruptcy and the loss of his home.

34. All of this caused Plaintiff severe physical and psychological trauma, pain and suffering.

35. After Plaintiff was released from prison, he had to start from nothing to rebuild his life outside of prison.

36. Plaintiff's wrongful conviction and the refusal of the DOJ to exonerate and comply with its own directives deprived him of his statutory due process right to be compensated for his wrongful conviction and the years he spent wrongfully imprisoned.

37. The misconduct committed by Detective Appleby, Shirley Henderson, Donald Henderson, Patrick Donovan, and Michael Oliver was objectively unreasonable and

was undertaken intentionally, with malice, with reckless indifference to Plaintiff's rights, and in total disregard of the truth and Plaintiff's innocence and constitutional rights, and each of them is therefore liable for punitive damages, as well as the other relief described below.

## Exhaustion of Remedies

38. In addition to Plaintiff's complaints to the DOJ Inspector General, the DOJ OPR, the Indiana Governor and State Police as mentioned above, Plaintiff wrote letters about these issues to Attorney General Garland on February 26 and April 30, 2021, and to the Acting Solicitor General Elizabeth Prelogar on April 30, 2021, and to the Chief of the DOJ Appellate Section Patty Stembler on July 13 and 30, 2021, and to the DOJ's Executive Office for United States Attorneys and Assistant United States Attorney Brian Reitz in Indianapolis on July 30, 2021, all without any response whatsoever except an August 25, 2021 form letter from the Criminal Division of DOJ refusing to comment or respond to Plaintiff's letter to Attorney General Garland. The refusal of these Government officials to respond to Plaintiff's letters or investigate the facts set forth in them constitutes malfeasance and a continuing conspiracy to coverup the misconduct, harm Plaintiff and ensure that he is not exonerated. These many inactions by executive officials of the Department of Justice constitute a final agency action for purposes of the Administrative Procedures Act, 5 USC 701 et seq.

39. On May 4, 2021, Plaintiff sent a formal complaint to Internal Affairs at the Indiana State Police requesting a full, transparent investigation of the corrupt

activities of Brooke Appleby, but Plaintiff never received any response. This failure
to respond or investigate the serious misconduct set forth in the complaint
constitutes malfeasance and a continuing conspiracy to coverup the misconduct,
harm Plaintiff and ensure that he is not exonerated.

40. On April 26, 2021, Plaintiff also filed a Motion to Recall the Mandate of
Plaintiff's direct trial appeal because of fraud upon the court which the DOJ did not
respond to and it was therefore denied a month later without comment. The failure
of the DOJ to respond and confess error constitutes malfeasance and a continuing
conspiracy to coverup the misconduct, harm Plaintiff and ensure that he is not
exonerated.

41. On March 17, 2021, the District Court for the Southern District of Indiana
denied post-conviction relief to Plaintiff on many of the issues raised in this
Complaint, not on the merits but rather because Defendant DOJ refused to follow
its own directives by raising defenses and erecting barriers to relief. The District
Court relied on defenses raised by DOJ to deny relief despite expressing "sympathy"
for Plaintiff's fraud upon the court claims. The DOJ's actions were done to deny
Plaintiff his right to exoneration and were part of a continuing coverup of
misconduct by DOJ officials.

42. On June 12, 2020, the District Court for the Southern District of Indiana
denied Plaintiff's Motion for DNA Testing finding that Plaintiff had no right to
demand that the DOJ waive jurisdiction re DNA issues under 18 U.S.C. 3600
because the DOJ has no authority to waive jurisdiction. This deprives Plaintiff of

his due process liberty interests in utilizing federal procedures and DOJ directives to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence as held by the Supreme Court in *Skinner v. Switzer*, 562 U.S. 521 (2011). On September 3, 2021, the District Court denied Plaintiff's Motion to Reconsider after the DOJ failed to respond. The failure of the DOJ to respond and confess error constitutes malfeasance and a continuing conspiracy to coverup the misconduct, harm Plaintiff and ensure that he is not exonerated.

43. The refusal of Government officials to respond in 2021 to Plaintiff's multiple requests for relief, and the Court of Appeals' and District Court's denial of relief, and the District Court's assault on Executive authority and the Separation of Powers amounts to an exhaustion of remedies in 2021.

44. The actions of Defendants constitute a "continuing wrong" because they are continuing to deprive Plaintiff of his due process right to exoneration.

## Jurisdiction and Venue

45.     The actions of the defendants took place in the Southern District of Indiana so venue is proper under 28 U.S.C. 1391(e). This Court has jurisdiction over this action under the provisions of 28 U.S.C. 1331 and 1343 because it is filed to obtain compensatory damages and punitive damages for the deprivation, under color of state and federal law, of the rights of Plaintiff secured by the Constitution and federal law pursuant to 42 U.S.C. 1983 and 1985(2)(cl 1). This Court has jurisdiction under 42 U.S.C. 1983 because state employees violated Plaintiff's constitutional rights under color of law. This Court has jurisdiction under 42 U.S.C.

1985(2)(clause 1) because two or more persons conspired to influence the verdict of the petit jury in Plaintiff's trial. This Court has jurisdiction under 28 U.S.C. 2201 because Plaintiff has requested declaratory relief. This Court has jurisdiction under 5 USC 702 because Plaintiff has suffered a legal wrong because of actions by the DOJ and ATF and the agencies failed to respond to complaints by Plaintiff which constitutes final agency action.

## COUNT I
## Due Process: Fabrication of Evidence

46. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

47. Defendants Department of Justice, Kennard Foster, Indiana State Police and Michael Oliver individually, jointly and in conspiracy with one another, as well as under color of law, individually and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial and due process by fabricating and presenting false microscopic hair evidence against him at trial.

48. Defendants Department of Justice, Kennard Foster, Indiana State Police, and Brooke Appleby individually, jointly and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial and due process by fabricating and presenting false, unreliable and bogus hypnosis testimony at Plaintiff's trial.

49. Defendant DOJ, by failing to respond and confess error on this issue constitutes malfeasance and a continuing conspiracy to coverup the misconduct, harm Plaintiff and ensure that he is not exonerated.

50. The right to due process and a fair trial is clearly established.

51. Defendants misconduct resulted directly in the wrongful conviction of Plaintiff. Absent this misconduct, Plaintiff's conviction would not have occurred.

52. This misconduct was objectively unreasonable and was undertaken intentionally, with malice, with reckless disregard of the truth and Plaintiff's clear innocence.

53. As a result of these Defendants' misconduct, Plaintiff suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

54. Plaintiff seeks a declaratory judgment against Defendants Indiana State Police, Michael Oliver and Kennard Foster finding that they fabricated false microscopic hair evidence, and against Department of Justice, Indiana State Police and Brooke Appleby that they fabricated false hypnosis and presented it to the jury which contributed to Plaintiff's wrongful conviction. Plaintiff seeks monetary damages against Michael Oliver and Brooke Appleby in the amount of $10,000,000.

## COUNT II
## Due Process and Fair Trial: Jury Tampering, Conspiracy To Influence Petit Juror And Coverup

55. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

56. Defendants Department of Justice, Kennard Foster, Brooke Appleby, Patrick Donovan, Shirley Henderson and Donald Henderson individually, jointly and in conspiracy with one another, as well as under color of law, individually and/or within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial and due process by engaging in jury tampering, spiking the jury with a relative and friend of Detective Appleby, and covering up that jury tampering for almost 40 years.

57. Defendants Brooke Appleby, Patrick Donovan, Donald Henderson and Kennard Foster conspired to and did influence the verdict of petit juror Shirley Henderson with the intent to injure Plaintiff and deprive him of a fair trial.

58. Defendant DOJ, by failing to truthfully respond and confess error on this issue, and by falsely accusing Plaintiff of jury tampering constitutes malfeasance and a continuing conspiracy to coverup the misconduct, harm Plaintiff and ensure that he is not exonerated.

59. The right to due process and a fair trial is clearly established.

60. Defendants misconduct resulted directly in the wrongful conviction of Plaintiff. Absent this misconduct, Plaintiff's conviction would not have occurred.

61. This misconduct was objectively unreasonable and was undertaken intentionally, with malice, with reckless disregard of the truth and Plaintiff's clear innocence.

62. As a result of these Defendants' misconduct, Plaintiff suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

63. Plaintiff seeks a declaratory judgment against the United States, Kennard Foster, Patrick Donovan, Brooke Appleby, Donald Henderson and Shirley Henderson that they engaged in jury tampering and a coverup.

64. Plaintiff seeks monetary damages against Patrick Donovan, Brooke Appleby, Shirley Henderson and Donald Henderson in the amount of $10,000,000.

## COUNT III
## Due Process: Fraud Upon The Court

65. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

66. Defendants Department of Justice, Kennard Foster, Brooke Appleby, Patrick Donovan, Shirley Henderson and Donald Henderson individually, jointly and in conspiracy with one another, as well as under color of law and/or within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial and due process by engaging in fraud upon the court by engaging in jury tampering and a conspiracy of silence and coverup, and intentionally refusing to comply with court orders regarding juror conduct.

67. Defendant DOJ, by failing to truthfully respond and confess error on this issue, and to falsely accuse Plaintiff of jury tampering constitutes malfeasance and a continuing conspiracy to coverup the misconduct, harm Plaintiff and ensure that he is not exonerated.

68. The right to due process and a fair trial is clearly established.

69. Defendants Department of Justice, Patrick Donovan and Kennard Foster continued that fraud upon the court by withholding the jury tampering from the trial court during a post-trial jury misconduct motion, and from the court of appeals and Supreme Court during the appellate process.

70. Defendants Department of Justice, Kennard Foster, Brooke Appleby and Patrick Donovan continued that fraud upon the court by hiding the fact that Brooke Appleby had secretly investigated Plaintiff for years prior to the hypnosis sessions and amassed a huge investigative file that he gave to Patrick Donovan but never disclosed to Plaintiff.

71. Defendants Department of Justice, Kennard Foster, Brooke Appleby and Patrick Donovan continued that fraud upon the court by falsely telling the trial court, and subsequently the appellate court and Supreme Court that Brooke Appleby was independent in order to secure a favorable ruling on the controversial issue of hypnosis.

72. Defendants' misconduct resulted directly in the wrongful conviction of Plaintiff. Absent this misconduct, Plaintiff's conviction would not have occurred and/or his conviction would have been overturned on appeal.

73. This misconduct was objectively unreasonable and was undertaken intentionally, with malice, with reckless disregard of the truth and Plaintiff's clear innocence.

74. As a result of these Defendants' misconduct, Plaintiff suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

75. Plaintiff seeks a declaratory judgment against the United States and Kennard Foster finding that they committed fraud upon the court by participating in jury tampering, hiding that tampering from the courts, and providing misleading information to the courts about the jury tampering directly and by omission, and misleading the courts about the independence of Brooke Appleby, for the purpose of harming Plaintiff.

76. Plaintiff seeks monetary damages against Defendants Patrick Donovan, Brooke Appleby, Shirley Henderson and Donald Henderson in the amount of $10,000,000.

## COUNT IV
### Violation of Procedural Due Process

77. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

78. Defendant DOJ denied Plaintiff procedural due process by refusing to comply with its own directives regarding the use of microscopic hair evidence, which it did comply with in the cases of many other defendants. Those procedures including

waiving barriers and defenses, admitting falsity, imputing the falsity to the government, and exonerating defendants where microscopic hair evidence was used.

79. Defendant DOJ denied Plaintiff procedural due process by acquiescing in the District Court's ruling that the DOJ had no authority to waive jurisdiction in DNA matters. This acquiescence was part of an intentional act by the DOJ to deprive Plaintiff of his right to due process and exoneration from a wrongful conviction, and it violated the language and spirit of DOJ's directives on microscopic hair evidence to test DNA evidence, and waive barriers and defenses that could bar exoneration.

80. Defendant DOJ, by failing to truthfully respond and confess error on this issue constitutes malfeasance and a continuing conspiracy to coverup the misconduct, harm Plaintiff and ensure that he is not exonerated.

81. The right to due process and a fair trial is clearly established.

82. Defendant DOJ's misconduct resulted directly in the continued wrongful conviction of Plaintiff when it should have been vacated. Absent this misconduct, Plaintiff would have been exonerated.

83. Defendant DOJ's misconduct deprived Plaintiff his statutory due process right to compensation for wrongful conviction under 28 U.S.C. 1495 and 2513.

84. This misconduct was objectively unreasonable and was undertaken intentionally, with malice, with reckless disregard of due process and Plaintiff's clear innocence.

85. As a result of Defendant's misconduct, Plaintiff continues to suffer from a wrongful conviction based on false evidence and testimony.

86. Plaintiff seeks a declaratory judgment against Defendant DOJ and Attorney General Garland that it failed to comply with its directives regarding microscopic hair evidence, that it has the authority to waive defenses and jurisdiction vis a vis microscopic and biological DNA evidence, and an order of damages in the amount that Plaintiff would be due under 28 U.S.C. 1495 and 2513 if DOJ had complied with its directives.

## COUNT V
### Failure To Intervene

87.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

88.     Defendants Brooke Appleby, Patrick Donovan and Kennard Foster, all officers of the court, stood by as jury tampering by Shirley Henderson took place without intervening to prevent the violation of Plaintiff's constitutional rights to due process and a fair trial, even though they had the opportunity to do so.

89.     Defendant Donald Henderson, the husband of Shirley Henderson who had a very close relationship with Detective Appleby, not only stood by as jury tampering by his wife took place but he actively participated in that jury tampering thereby failing to prevent the violation of Plaintiff's constitutional rights to due process and a fair trial, even though he had the opportunity to do so. Defendant Donald Henderson was an active participant in the corruption of the juror, he met with Detective Appleby during the trial, and he later rewarded Detective Appleby with a job at a large enterprise where he was an executive.

90.     This misconduct was objectively unreasonable and was undertaken intentionally, with malice, with reckless disregard of due process and Plaintiff's clear innocence.

91.     As a result of Defendants' misconduct, Plaintiff continues to suffer from a wrongful conviction based on jury tampering, false evidence and testimony.

92.     Plaintiff seeks a declaratory judgment against Defendants Brooke Appleby, Patrick Donovan, Kennard Foster and Donald Henderson that they failed to intervene, and monetary damages against Brooke Appleby, Donald Henderson and Patrick Donovan in the amount of $10,000,000.

## COUNT VI
### Failure To Supervise And Maintain Records, and Fabrication of Evidence

93.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

94.     Defendant Indiana State Police failed to supervise its employee, Detective Brooke Appleby, during his secret, rogue investigation of Plaintiff in or about 1975-1978, and did not properly supervise him when he participated in jury tampering in 1981, which both led to Plaintiff's wrongful conviction.

95.     Defendant Indiana State Police failed to keep or maintain records of Detective Appleby's rogue investigation of Plaintiff as required by their own procedures and regulations.

96.     Defendant Indiana State Police and its Crime Lab fabricated microscopic hair evidence that was used to convict Plaintiff and failed to maintain

records of that lab analysis or conduct any review after the DOJ found that such evidence was false in 95% of cases and informed ISP about those findings.

97.     Defendant Indiana State Police failed to conduct any review of the misuse of hypnosis by Detective Appleby.

98.     This misconduct was objectively unreasonable and was undertaken intentionally, with malice, with reckless disregard of due process and Plaintiff's clear innocence.

99.     As a result of Defendant's misconduct, Plaintiff continues to suffer from a wrongful conviction based on false evidence and testimony.

100.     Plaintiff seeks a declaratory judgment against Defendant Indiana State Police and monetary damages in the amount of $10,000,000.

## COUNT VII
### Destruction Of DNA Evidence And Failure To Follow Retention Procedures

101.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

102.     Defendants DOJ and ATF, by losing or destroying biological DNA evidence that could exonerate Plaintiff or implicate the true perpetrator of the crimes, and by not properly following established retention directives and procedures, and by not properly maintaining the DNA evidence and all records about that evidence or its alleged destruction, deprived Plaintiff of his right to DNA testing and its resultant exoneration of Plaintiff.

103.    Defendant DOJ, by failing to respond and confess error on this issue constitutes malfeasance and a continuing conspiracy to coverup the misconduct, harm Plaintiff and ensure that he is not exonerated.

104.    This misconduct was objectively unreasonable and was undertaken intentionally, with malice, with reckless disregard of due process and Plaintiff's clear innocence.

105.    As a result of Defendant's misconduct, Plaintiff continues to suffer from a wrongful conviction based on false evidence and testimony.

106.    Plaintiff seeks a declaratory judgment against Defendants DOJ and ATF finding that they improperly lost or destroyed the biological evidence, failed to follow DNA retention procedures, and failed to maintain the biological evidence and all records about it.

### COUNT VIII
### Denial Of Due Process By The Continued Coverup Of Official Misconduct

107.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

108.    28 USC 1651 and 18 USC 3600 and DOJ directives on microscopic hair evidence each give Plaintiff a due process right to be exonerated on grounds of innocence, manifest injustice, and/or fraud upon the court.  In fact, the DOJ directives state that exoneration in cases that used microscopic hair evidence was required "in the interest of justice."  However, Defendants DOJ and Attorney General Merrick Garland, by failing to follow these statutes and their intent to

correct injustices, has denied Plaintiff due process and continued a coverup of official misconduct by the Defendants named in this Complaint.

109.     By engaging in false statements and accusations against Plaintiff that he, not the DOJ, engaged in jury tampering, Defendant DOJ has corrupted and perverted justice. This unethical misconduct deprived Plaintiff of due process to a fair adjudication of his right to a fair trial and it continued a coverup of official DOJ misconduct that has lasted more than 40 years.

110.     By failing to admit the black letter official misconduct set forth by Plaintiff, Detective Appleby and Dan Luzadder, and opposing and thwarting any investigation of that grotesque corruption and misconduct, Defendant DOJ and Attorney General Garland have deprived Plaintiff of due process to a fair adjudication of his right to a fair trial and continued a coverup of official DOJ misconduct that has lasted more than 40 years.

111.     Defendant DOJ's actions in covering up this official misconduct has been done to protect corrupt officials and law enforcement officers, a dishonest, prevaricating and corrupt juror, and her conspiring husband. This corrupt coverup has been done at the expense of justice, the entire justice system, the reputation of honest government officials, and the due process rights of Plaintiff.

112.     This misconduct was objectively unreasonable and was undertaken intentionally, with malice, with reckless disregard of due process and Plaintiff's clear innocence.

113.     As a result of Defendant's misconduct, Plaintiff continues to suffer from a wrongful conviction based on false evidence and testimony.

114.     Plaintiff seeks a declaratory judgment against Defendant DOJ and Attorney General Merrick Garland finding that they engaged in a continuing coverup to protect the corrupt Defendants and deny Plaintiff due process and a fair adjudication of his right to a fair trial..

## COUNT IX
## Fourth Amendment Illegal Search

115.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

116.     Defendant Brooke Appleby, under color of law, by conducting a multi-year investigation of Plaintiff, which included warrantless and illegal searches of his properties, vehicles and aircraft, illegal surveillance of Plaintiff, illegal aerial and ground photographs of Plaintiff's properties and of Plaintiff alone and with others, violated Plaintiff's right to be free from illegal searches, and violated his right to privacy in his properties and personal effects.  Defendant Appleby covered up his illegal searches for approximately 40 years in order to deprive Plaintiff of a fair trial, right to redress, and right to compensation.

117.     The right to unreasonable searches is clearly established.

118.     Defendant Brooke Appleby's misconduct resulted in harm to Plaintiff.

119.    This misconduct was objectively unreasonable and was undertaken intentionally, with malice, with reckless disregard to the Fourth Amendment rights of Plaintiff.

120.    As a result of these Defendant's misconduct, Plaintiff suffered great emotional pain and suffering, and other grievous and continuing injuries and damages.

121.    Plaintiff seeks a declaratory judgment that Defendant Appleby violated Plaintiff's Fourth Amendment rights, and monetary damages in the amount of $500,000.

**WHEREFORE**, Plaintiff Brett Kimberlin respectfully requests that this Court enter judgment in his favor and against Defendants as requested in each count and award the requested monetary damages against the named defendants and award punitive damages as appropriate.  In the case of the declaratory judgments against the DOJ and ATF considered under the Administrative Procedures Act, Plaintiff requests that the Court's order be directed at Defendant Merrick Garland.

**JURY DEMAND**

Plaintiff Brett Kimberlin hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

Brett Kimberlin
8100 Beech Tree Road
Bethesda, MD 20817
(301) 320-5921

September 20, 2021